# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| *In re:* | Chapter 7 |
| CGI JOLIET, LLC, *et al.*,[1] | Case No. 17-18810 |
| *Debtors.* | Hon. Pamela S. Hollis |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **October 11, 2018, at 11:00 a.m.**, or as soon thereafter as counsel may be heard, I shall appear before the **Honorable Pamela S. Hollis**, Bankruptcy Judge, in Courtroom No. 644, U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or in her absence, before such other Judge who may be sitting in her place and stead and hearing bankruptcy motions, and shall then and there present the **TRUSTEE'S MOTION FOR AN ORDER (A) APPROVING BID PROCEDURES, (B) AUTHORIZING THE SALE OF REAL ESTATE OF RACEWAY CENTRAL DOWNERS GROVE LLC FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND (C) GRANTING RELATED RELIEF,** a copy of which is attached and herewith served upon you, and shall pray for the entry of an order in conformity with the prayer of said pleading, at which hearing you may appear if you see fit.

Dated: October 4, 2018

Respectfully submitted,

Gregg E. Szilagyi, in his capacity as chapter 7 trustee for the bankruptcy estate of Raceway Central Downers Grove LLC,

By: */s/ David R. Doyle*
    One of his attorneys

Robert W. Glantz (#6201207)
Ira Bodenstein (#3126857)
David R. Doyle (#6303215)
Fox Rothschild LLP
321 North Clark Street
Suite 800
Chicago, IL  60654
Phone: (312) 541-0151

---

[1] The Debtors in these Chapter 7 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are CGI Joliet, LLC (7014), Currency Express, Inc. (2650), Raceway Central, LLC (2161), Raceway Central Calumet Park LLC (2161), Raceway Central Chicago Heights LLC (2161), Raceway Central Downers Grove LLC (2161), Raceway Central Joliet North LLC (2161), Raceway Central LLC North Valpo (2161), and Raceway Central Wheaton LLC (2161).

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re:* | Chapter 7 |
| CGI JOLIET, LLC, *et al.*,[2] | Case No. 17-18810 |
| *Debtors.* | Hon. Pamela S. Hollis |

**TRUSTEE'S MOTION FOR AN ORDER (A) APPROVING BID PROCEDURES, (B) AUTHORIZING THE SALE OF REAL ESTATE OF RACEWAY CENTRAL DOWNERS GROVE LLC FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, AND (C) GRANTING RELATED RELIEF**

Gregg E. Szilagyi, not individually, but in his capacity as chapter 7 trustee (the "*Trustee*") of the bankruptcy estate (the "*Estate*") of Raceway Central Downers Grove LLC ("*Raceway Downers*"), pursuant to sections 363(b) and (f) of title 11 of the United States Code (the "*Bankruptcy Code*"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), hereby moves (the "*Motion*") this Court to enter orders: (i) authorizing the Trustee to enter into that certain *Purchase and Sale Agreement,* dated September 19, 2018 (the "*Sale Agreement*") between the Trustee and DTS Properties, LLC ("*DTS*"), a copy of which is attached hereto as <u>Exhibit A</u>, in connection with the sale of the real estate commonly known as 1212 75th Street, Downers Grove, Illinois, 60516 and certain additional real and personal property (collectively, the "*Property*") as identified in the Sale Agreement; (ii) entering bidding procedures as contemplated in the Sale Agreement in connection with the sale of the Property

---

[2] The Debtors in these Chapter 7 Cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are CGI Joliet, LLC (7014), Currency Express, Inc. (2650), Raceway Central, LLC (2161), Raceway Central Calumet Park LLC (2161), Raceway Central Chicago Heights LLC (2161), Raceway Central Downers Grove LLC (2161), Raceway Central Joliet North LLC (2161), Raceway Central LLC North Valpo (2161), and Raceway Central Wheaton LLC (2161).

substantially in the form attached hereto as <u>Exhibit B</u>; (iii) setting a final hearing on the Motion; (iv) authorizing the Trustee to sell the Property free and clear of all claims, liens and encumbrances; and (v) granting related relief. In support of the Motion, the Trustee respectfully states as follows:

## Background

### A. Jurisdiction

1. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157(b)(2)(D) and 1334. Venue of this proceeding and this Motion in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

### B. The Bankruptcy Cases

2. On May 2, 2017, certain creditors of Central Grocers, Inc. ("***CGI***") commenced an involuntary bankruptcy case against CGI under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois.

3. On May 4, 2017, each of the following entities filed voluntary petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "***Delaware Court***"): CGI, CGI Joliet, LLC ("***CGI Joliet***"), Currency Express, Inc. ("***Currency Express***"), Raceway Central, LLC ("***Raceway Central***"), Raceway Central Calumet Park, LLC ("***Raceway Calumet***"), Raceway Central Chicago Heights LLC ("***Raceway Chicago***"), Raceway Central Downers Grove, LLC ("***Raceway Downers***"), Raceway Central Joliet North LLC ("***Raceway Joliet***"), Raceway Central LLC North Valpo ("***Raceway Valpo***"), Raceway Wheaton, Strack and Van Till Super Market ("***Strack***"), and SVT, LLC ("***SVT***") (collectively, the "***Debtors***").

2

4. On June 13, 2017, this Court directed that each of the Debtors' bankruptcy cases pending in the Delaware Court be transferred to this Court.

### C. Conversion to Chapter 7

5. On November 30, 2017, the Court entered an order [Dkt. No. 1085] converting the Debtors' bankruptcy cases from chapter 11 to chapter 7 of the Bankruptcy Code, effective as of December 4, 2017 at 3:00 p.m. (CT) (the "*Conversion Order*").

6. On December 4, 2017, the United States Trustee for Region 11 appointed Peter N. Metrou as the interim chapter 7 trustee (the "*Interim Trustee*") for the bankruptcy estates of all of the Debtors.

7. At the subsequent § 341 meeting of creditors on January 11, 2018, the creditors elected new chapter 7 trustees for all of the Debtors' bankruptcy estates, as follows:

   a. Gregg Szilagyi was elected trustee of the bankruptcy estates of CGI Joliet, Currency Express, Raceway Central, Raceway Calumet, Raceway Chicago, Raceway Downers, Raceway Joliet, Raceway Valpo, and Raceway Wheaton (collectively, the "*Raceway Debtors*").

   b. Howard Samuels was elected trustee of the bankruptcy estates of CGI, Strack and SVT.

8. The bankruptcy cases of the Raceway Debtors are being jointly administered under the lead bankruptcy case of CGI Joliet. *See* [Dkt. No.1343].

### D. The Property

9. Raceway Downers owns the Property, which comprises a 76,850 square foot retail building on an approximately 9.69 acre lot that formerly housed an Ultra Foods grocery store. The Property is currently vacant and accrues monthly costs and expenses related to upkeep and security (including, but not limited to, real estate taxes, property management and insurance).

10. The Property is encumbered by mortgages in favor of the Bank of the West, as administrative agent, and PNC Bank, as administrative agent (the "**Lenders**"). Pursuant to that certain *Settlement Agreement and Release*, dated October 23, 2017 (the "**Settlement**"), which the Court approved by entering the *Order Authorizing and Approving Settlement Agreement by and among the Secured Parties and the Official Committee of Unsecured Creditors of Central Grocers, Inc., et al., on behalf of Itself, Each of the Debtors, and Each of the Debtors' Estates* [Case No. 17-13886, Dkt. No. 988] (the "**Settlement Order**"), the Trustee is required to pay forty-five percent (45%) of the Net Proceeds from the sale of the Property to the Agent (as such terms are defined in the Settlement Order) for the benefit of the Lenders, with the remaining (55%) of the Net Proceeds to be paid to the Raceway Downers Estate for the benefit of the Debtors' estates pursuant to the terms of the Settlement Order.

**E. Broker and Marketing Efforts**

11. Prior to entry of the Conversion Order, the Debtors filed the *Application of Debtors for (A) Authorization to Retain and Employ Peter J. Solomon Company as Investment Banker for the Debtors* Nunc Pro Tunc *to the Commencement Date and (B) Waiver of Certain Requirements under Local Rule 2016-2* [Dkt. No. 203] (the "**Banker Retention Application**"). In the Banker Retention Application, the Debtors sought approval to hire Peter J. Solomon Company ("**PJSC**") to provide investment banking services to the Debtors. Prior to the Petition Date, PJSC had "designed and executed a process for selling the Debtors' business as a going concern and or for consummating another strategic, value-maximizing transaction," and the Debtors anticipated PJSC providing similar services during the bankruptcy cases. (Banker Retention Application at 5-6.) On June 20, 2017, the Court entered an order granting the Banker Retention Application. *See* [Dkt. No. 206] (the "**Banker Retention Order**").

12. Under the Banker Retention Order, one of the components of PJSC's compensation was a percentage of the sale price of real estate assets, as follows:

    c. With respect to the Debtors' sale of real estate assets,

        i. for any real estate asset sold, other than real estate assets that are part of the Strack Assets, where the Debtors have received a purchase agreement, from a buyer with the financial wherewithal to close the transaction, that is not subject to any financing contingencies and that contains such other terms (other than price) which are all reasonably acceptable to the Debtors (a **"Firm Bid"**) before another advisor is hired to market and sell such assets, PJSC shall receive the lesser of (i) 2.1 % of the value ascribed in the Firm Bid for such asset; and (ii) 2.1% of the Aggregate Consideration received by the Debtors for such asset.

(Retention Order ¶ 3.) The Property was one of the properties for which the Debtors received a Firm Bid.

13. Subsequently, the Debtors filed the *Application of Debtors for Authorization to Enter into Representation Agreement and to Employ and Retain Broker* Nunc Pro Tunc *to July 18, 2017* [Dkt. No. 373] (the "**Broker Retention Application**"). The Court granted the Broker Retention Application and approved the Debtors' retention of Marcus & Millichap Real Estate Investment Services of Chicago and Marcus & Millichap Real Estate Investment Services as real estate broker for the Property (collectively, the "**Broker**"). *See* [Dkt. No. 519] (the "**Broker Retention Order**"). Pursuant to the Broker Retention Application and Broker Retention Order, the Broker is entitled to compensation in the amount of 2.9% of the purchase price from the sale of the Property. After entry of the Conversion Order, the Interim Trustee and the Trustee assumed the terms of the Broker Retention Order. *See* [Dkt. Nos. 1112, 1344].

14. The Broker has marketed the Property on behalf of the Raceway Downers Estate since July 2017. The Broker sent targeted emails advertising the Property to approximately 1800 brokers within the Broker's firm, approximately 50,000 other principals and brokers, and over 10,000 other potentially interested parties. Utilizing its online brokerage platform, the Broker has received over 2,500 views of the Property on its website. As a result of its marketing efforts, the Broker has shown the Property to over a dozen potential purchasers and other brokers and received numerous letters of intent to purchase the Property.

### F. The First Sale Motion

15. On March 29, 2018, the Trustee filed the *Trustee's Motion for an Order Authorizing the Sale of Real Estate of Raceway Downers Grove LLC Free and Clear of Liens, Claims and Encumbrances* [Dkt. No. 50] (the "**First Sale Motion**"). In the First Sale Motion, the Trustee sought authority to sell the Property to Dalan Development Corporation ("**Dalan**") for the purchase price of $4.1 million.

16. On or about April 19, 2018, the Court entered an *Order Granting Trustee's Motion for an Order Authorizing the Sale of Real Estate of Raceway Central Downers Grove, LLC Free and Clear of Liens, Claims and Encumbrances* [Dkt. No. 87], which granted the First Sale Motion.

17. On or about May 18, 2018, Dalan terminated the agreement to purchase the property pursuant to one of the contingencies contained therein.

### G. The Sale Agreement

18. On or about September 18, 2018, the Trustee entered into the Sale Agreement with DTS, another potential purchaser identified by the Broker. The Sale Agreement contemplates a sale of the Property to DTS for the purchase price of $2,650,000 (the "**Purchase Price**"), subject

to higher and better bids obtained at an auction of the Property to take place on November 14, 2018 (the "*Auction*") pursuant to certain bid procedures (the "***Bidding Procedures***").

19. The material terms of the Sale Agreement include, but are not limited to, the following:

    a. The sale of the Property is subject to the entry of an order approving the sale by this Court providing that the sale is free and clear of all liens, claims and encumbrances with all liens, claims and encumbrances attaching to the proceeds of the sale;

    b. A purchase price of $2,650,000.00;

    c. An initial earnest money deposit in the amount of $100,000.00; and

    d. The sale of the Property "as is, where is" and without representations or warranties.

20. The Bidding Procedures to which DTS and the Trustee agreed are set forth in detail in the Sale Agreement and on Exhibit B. The material terms of the Bidding Procedures include, but are not limited to, the following:

    a. The Trustee shall solicit bids for the sale of the Property by, among other things, publishing notice of the Auction.

    b. Potential Bidders[3] who desire to participate in the Auction must submit a packet of disclosures and other materials to the Trustee, including a cashier's check or certified check for the Earnest Money, proof of financial ability to purchase the Property, and an executed purchase agreement substantially in the form of the Sale Agreement offering to purchase the property for an amount exceeding the Purchase Price by $150,000 (an "*Overbid*"). Potential Bidders who comply with the foregoing shall be considered a Qualified Bidder and eligible to participate in the Auction.

    c. DTS shall be considered a Qualified Bidder and eligible to participate in the Auction, provided that DTS is not otherwise in default under the terms of the Sale Agreement.

    d. The Trustee shall grant reasonable access to the Property to any party expressing an interest in viewing the Property for the purpose of making a bid.

---

[3] Undefined terms herein shall carry the meanings set forth in the Sale Agreement.

7

e. The Trustee shall hold the Auction on November 14, 2018. At the Auction, the opening bid must exceed the Purchase Price by the Overbid amount. Incremental bids after the opening bid must exceed the previous high bid by at least $10,000. At the conclusion of the Auction, the Trustee and his representatives will determine which Qualified Bid is, in their collective best judgment, the highest and best bid and determine the Winning Bidder. The offers of all Qualified Bidders tendered at the Auction shall be irrevocable until the earlier of (i) the entry of the Sale Order or (ii) the withdrawal of the Property for sale by the Seller.

f. If DTS is not determined to be the Winning Bidder, the Trustee agrees to pay DTS a Break-Up Fee in the amount of the lesser of (a) DTS's actual out-of-pocket fees and expenses related to the sale, and (b) $100,000. If DTS is determined to be the Winning Bidder, DTS shall not be entitled to a Break-Up Fee, and the Winning Bid shall thereafter constitute the Purchase Price under the Sale Agreement.

g. In the event that a Winning Bidder defaults in the performance of its obligation to purchase the Property pursuant to a Winning Bid, that person's Earnest Money shall be forfeited and shall be immediately transferred to the Seller. Any person making an Earnest Money deposit including DTS who does not become the Winning Bidder shall have its Earnest Money deposit returned within two (2) business days after the earlier of (i) the entry of the Sale Order or (ii) the withdrawal of the Property for sale by the Seller.

h. In the event that a Winning Bidder defaults in the performance of its obligations to purchase the Property pursuant to a Winning Bid, then Seller may treat the next highest bidder for the Property as the Winning Bidder. Consequently, that person's bid ("**Back-Up Bid**") will be treated as the Winning Bid, without further notice, hearing or entry of any additional order by the Bankruptcy Court.

i. After the Auction, the Trustee shall seek entry of a final Sale Order authorizing the sale of the Property to the Winning Bidder. If as of the Auction Date, there are no Qualified Bidders other than DTS, the Trustee shall be obligated to sell the Property pursuant to the terms and conditions of the Sale Agreement without further extension or delay, and the Trustee shall seek entry of a final Sale Order authorizing the sale of the Property to DTS.

**Relief Requested**

**I.   The Court should approve the Sale Agreement and Bidding Procedures.**

21.     Section 363 of the Bankruptcy Code provides that the Trustee, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b). To approve the use, sale or lease of property outside the ordinary course

8

of business, the Court need only determine that the Trustee's decision is supported by "some articulated business justification." *See, e.g., Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991); *see also In re Telesphere Communications, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999). The Seventh Circuit has stated that a trustee's justification for a transaction warrants judicial approval if it makes good business sense and the estate's creditors benefit. *Retired Pilots Ben. Prot. Ass'n v. United Airlines, Inc.(In re UAL Corp.),* 443 F.3d 565, 571–72 (7th Cir. 2006) (citing *Schipper*, 933 F.2d at 515); *Colfin Bulls Funding A, LLC v. Paloian (In re Dvorkin Holdings, LLC),* 2016 WL 1029387 at *4 (N.D. Ill., March 14, 2016) ("[A] trustee's justification warrants judicial approval if it 'makes good business sense.'"). Bankruptcy Rule 6004(f)(1) permits sales of estate property outside of the ordinary course of business by private sale or, as proposed by the Trustee, by auction.

22.     In this case, the Trustee has determined to sell the Property, which is vacant and continues to accrue monthly expenses for its security and maintenance. The proposed sale process, as implemented by the Bidding Procedures, makes "good business sense" and is a sound and reasonable exercise of the Trustee's business judgment. The Bidding Procedures utilize an auction process to elicit the highest value for the Property and maximize the recovery to creditors of the Estate. The Bidding Procedures also employ certain safeguards to ensure an efficient Auction and limit expenses incurred by the Estate in its administration of the Auction. For example, the Bidding Procedures limit participation in the Auction to parties who have the financial means to close a purchase of the Property, prevent parties from submitting immaterially higher bids at the Auction, and permit the Trustee to sell the Property to the Back-Up Bidder in the event the Winning Bidder chooses not to close on the sale of the Property.

23. The Bidding Procedures also include a Break-Up Fee payable to DTS. The Break-Up Fee compensates DTS for the costs and expenses that it incurs in the sale process in the event that DTS is not determined to be the Winning Bidder at the Auction. The purpose of the Break-Up Fee is to incentivize DTS to participate in the sale process by playing the vital role of "stalking horse bidder," thereby creating a market for the Property and setting the floor bid at the Auction. The Break-Up Fee is limited, however, to the lesser of (i) $100,000 or (ii) DTS's actual costs and expenses. By this structure, the Break-Up Fee both prevents DTS from obtaining a windfall and protects the Estate from incurring excessive and unreasonable administrative expenses.

24. As such, the Bidding Procedures, including the Break-Up Fee, are a reasonable and valid exercise of the Trustee's business judgment, and should be approved in full.

**II.    The Court should approve the sale of the Property to DTS or the Winning Bidder at the Auction free and clear of all claims, liens and encumbrances.**

25. Under § 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any lien, claim, or interest in such property if, among other things:

(1)   applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)   such entity consents;

(3)   such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4)   such interest is in bona fide dispute; or

(5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

26. Because section 363(f) is drafted in the disjunctive, the Trustee's satisfaction of any one of its five requirements will be sufficient to permit the sale of the Property free and clear of liens, claims and other interests (collectively, the "*Interests*"). The Trustee believes that the only

10

entity holding an interest in the Property (other than liens arising from real estate taxes) are the Lenders, who are entitled to accept 45% of the Net Proceeds in satisfaction of their interest under the terms of the Settlement Order.

27.   Moreover, all holders of Interests can be compelled to accept a money satisfaction of such Interests in legal or equitable proceedings in accordance with § 363(f)(5). In this case, the Trustee proposes that any Interests in the Property shall attach to the net proceeds of the Sale.

### III. The Court should set a final hearing on the Motion for entry of a final order approving the Sale.

28.   The proposed Bidding Procedures contemplate entry by the Court of a final Sale Order approving the sale of the Property to DTS or, depending on whether an Auction is held, to the Winning Bidder. The Trustee thus requests that the Court set a final hearing (the "*Final Hearing*") on this Motion for the next scheduled omnibus hearing date in this case, November 15, 2018, at 11:00 a.m., which is after the date scheduled for the Auction, to approve the sale of the Property.

### IV. The Court should approve the proposed notice of this Motion and the Final Hearing.

29.   Bankruptcy Rule 2002(a)(2) requires the Trustee to give at least 21 days' notice by mail to the debtor and all creditors of a "proposed use, sale or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown directs another method of giving notice." In this case, the Court has established certain notice procedures that govern service of various requests for relief by the Trustee and other parties in interest. [Case No. 17-13886, Dkt. No. 1333] (the "*Notice Procedures*"). By its terms, however, the Notice Procedures do not apply to "any proposed . . . sale . . . of property of the estate . . . to the extent that such . . . sale . . . concerns all or substantially all of the Debtors' assets." (Notice Procedures ¶ 23.b.) As

11

such, the Notice Procedures do not apply to this Motion, which seeks to sell substantially all of the assets of the Estate.

30. The Trustee proposes to serve a copy of the notice of the Final Hearing, attached hereto as <u>Exhibit C</u> (the "***Sale Notice***"), Motion, and Bidding Procedures on the following parties: (a) counsel for the United States Trustee, (b) all creditors of the Estate, (c) the Standard Parties (as defined in the Notice Procedures), (d) PJSC, (e) the Broker, (f) all parties who have requested notice in this case, and (g) all entities reasonably known by the Trustee to have an Interest in the Property to be sold, by regular mail, or by CM/ECF if such parties have appeared by counsel, no later than the third day after entry of an order approving the Bidding Procedures. The Trustee requests that the Court approve such notice as sufficient under Bankruptcy Rule 2002(a)(2).

**Conclusion**

For all of these reasons, Gregg E. Szilagyi, in his capacity as chapter 7 Trustee of the bankruptcy estate of Raceway Central Downers Grove LLC, respectfully requests that the Court: (i) authorize the Trustee to enter into the Sale Agreement attached hereto as Exhibit A; (ii) approve the Bidding Procedures for the sale of the Property attached hereto as Exhibit B; (iii) authorize the Trustee to sell the Property free and clear of all liens, claims and encumbrances pursuant to the Bidding Procedures; (iv) approve the notice of the Motion, Bidding Procedures and Final Hearing as proposed herein; (v) authorize the Trustee to pay from the proceeds of the sale of the Property all ordinary costs and expenses, including the Broker and PJSC's commissions; and (vi) grant such other just and appropriate relief.

*[the remainder of this page intentionally left blank]*

ACTIVE\65435219.v1-10/4/18

Dated:  October 4, 2018

Respectfully submitted,

Gregg E. Szilagyi, in his capacity as chapter 7 trustee for the bankruptcy estate of Raceway Central Downers Grove LLC

By: _____*/s/ David R. Doyle*_____
        One of his attorneys

Robert W. Glantz (#6201207)
David R. Doyle (#6303215)
Fox Rothschild LLP
321 North Clark Street, Suite 800
Chicago, IL 60654
Phone: (312) 541-0151
rglantz@foxrothschild.com
ddoyle@foxrothschild.com